# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JOHN R. GUTIERREZ,**

      **Plaintiff,**

vs.                                                    **No. CIV 02-1216 WDS**

**JO ANNE B. BARNHART, Commissioner**
of the Social Security Administration,

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on June 6, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits or supplemental security income. The Court, having considered Plaintiff's Motion [docket # 15] and Memorandum Brief [docket # 16], Defendant's Response [docket # 19], Plaintiff's Reply [docket # 20], the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

## I. Background

Plaintiff, who was born on April 17, 1961, worked as a molding machine operator, truck driver, and construction worker before the onset of his alleged disability. Tr. 37, 63. Plaintiff underwent carpal tunnel release surgery on his right arm on January 7, 2000, Tr. 138-39, but he alleges that he continues to suffer pain. He also has been diagnosed with medial epicondylitis of the left and right elbows, Tr. 168, 197, and pain disorder associated with both psychological factors and a general medication condition, Tr. 207.

Plaintiff filed his initial application for disability insurance benefits ("DIB") under Title II of the Social Security Act on June 10, 2000, Tr. 88-90, and for supplemental security income ("SSI") under Title XVI of the Social Security Act on February 16, 2001. Tr. 263-65. Plaintiff alleged that he became unable to work as a result of his disabling conditions on August 10, 1999. Tr. 88, 263. After Plaintiff's application was denied at the initial level, Tr. 71-74, and at the reconsideration level, Tr. 76-79, Plaintiff appealed by filing a request for hearing by an administrative law judge ("ALJ") on June 27, 2001, Tr. 80-81.

The hearing before the ALJ was held on February 13, 2002, at which Plaintiff appeared and was represented by a non-attorney. Tr. 28-68. Plaintiff alleged that he was disabled as a result of carpal tunnel syndrome, medial epicondylitis, and mental impairments. Tr. 35, 38-39, 50-54. In a decision dated June 19, 2002, the ALJ denied Plaintiff's claims for DIB and SSI. Tr. 17-25. Plaintiff then filed a request for review with the Appeals Council on August 15, 2002. Tr. 11-13. The Appeals Council denied Plaintiff's request for review on September 13, 2002, Tr. 8-9, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481

On September 27, 2002, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on February 24, 2004 [docket # 22].

## II. Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of*

*Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform

past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III. Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 18. The ALJ found at step two that Plaintiff has severe impairments of bilateral medial epicondylitis, right carpal tunnel syndrome status post release, and a pain disorder, but found at step three that Plaintiff's impairments are not severe enough to meet any of the Listings. Tr. 19. At step four, the ALJ concluded that Plaintiff retains the RFC to perform a significant range of sedentary to light work. Tr. 24. Given this RFC assessment, the ALJ found that Plaintiff cannot perform his past relevant work. Tr. 22. However, at step five the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff can perform. Tr. 24. Plaintiff contends that the ALJ erred at steps four and five.

### IV. Discussion

#### A. Whether the ALJ Erred at Step Five of the Sequential Analysis

Plaintiff contends that the ALJ committed errors at step five of the sequential analysis that require reversal for immediate payment of benefits. In response, Defendant concedes that the ALJ committed errors at step five, but instead requests remand for further administrative proceedings.

4

The relevant facts and the parties' arguments are as follows.

At step five of the sequential analysis, the Commissioner bears the burden of establishing that the claimant has the RFC to perform work that exists in significant numbers in the national and regional economies. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir. 1993); 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). In order to assist in his step five determination, the ALJ called Mr. Daniel Moriarty to testify as a Vocational Expert ("VE") at the hearing. The ALJ asked the VE to assume that a hypothetical person had the following limitations: "He has problems with the dominant hand and arm such that it's used primarily as a helper, can be used as a helper, he can grip with it, but not repetitively. And does not have any ability to do fine finger, no fine finger ability with the, with the hand. And the doctors recommend that he not do repetitive motions with, with either hand." Tr. 63. The ALJ also included a ten pound limit on lifting. Tr. 64. With those limitations, the VE testified that a person of Plaintiff's age, educational background and experience could perform the jobs of a surveillance system monitor, information clerk, and body guard or gate guard. Tr. 63-64. The VE also testified that the job of gate guard was semi-skilled, the job of an information clerk is semi-skilled, and the job of a surveillance system monitor is unskilled. Tr. 64. Additionally, in response to a question by the ALJ, the VE testified that Plaintiff had acquired no transferable skills from his previous employment. Tr. 63-64.

### 1. The ALJ's Hypothetical Question to the VE Failed to Reflect All of Plaintiff's Impairments

Plaintiff contends that the ALJ erred for several reasons when he found that Plaintiff could perform a significant number of jobs in the national economy. First, Plaintiff contends that the hypothetical question posed to the VE was defective. Hypothetical questions posed to a VE "must

5

reflect with precision all of [a claimant's] impairments, but they need only reflect impairments and limitations that are borne out by the evidentiary record." *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996). In formulating his hypothetical, the ALJ relied upon a Physical Capacities Evaluation completed by Dr. Belyn Schwartz on January 29, 2002. Tr. 19-20 (citing Tr. 249-50). The ALJ concluded that Dr. Belyn Schwartz's opinions regarding Plaintiff's physical impairments and limitations were entitled to controlling weight "because she is a treating specialist and because her opinion is well supported and is not inconsistent with other substantial evidence." Tr. 20. However, the ALJ's hypothetical to the VE did not include all of the physical limitations noted by Dr. Schwartz. Having given Dr. Schwartz's opinions controlling weight, the ALJ was not free to selectively disregard some of her findings without explanation. I therefore find that the ALJ erred when he failed to include in his hypothetical the additional limitations Dr. Schwartz indicated Plaintiff suffered. In addition to the limitations the ALJ included in his hypothetical, Dr. Schwartz expressed the opinion that Plaintiff could not push or pull arm controls with either arm, could not crawl, climb or reach, and should avoid all repetitive motions with his upper extremities. Tr. 249-50. When Plaintiff's representative at the hearing included these additional limitations in a hypothetical, the VE testified that those limitations would eliminate the jobs of information clerk and body guard or gate guard. Tr. 65-66. Thus, when all of Plaintiff's limitations were included in a hypothetical to the VE, the only job mentioned by the VE that Plaintiff could perform was that of surveillance system monitor.

**2. The ALJ Erred When He Found That Transferability of Skills Was Not An Issue**

The ALJ committed an additional error that requires a finding that, of the three jobs the VE testified that Plaintiff could perform, Plaintiff could only perform the duties of a surveillance system monitor. In this regard, Plaintiff also contends that the ALJ erred when he found that transferability

6

of skills is not an issue in this case. *See* Tr. 24. Plaintiff asserts that, given the VE's testimony that Plaintiff acquired no transferable skills from his past work, surveillance system monitor was the only job that he could perform because it was the only position the VE mentioned that was classified as "unskilled." Defendant concedes that "the ALJ erred in relying on the VE's testimony that Plaintiff could perform semi-skilled work as an information clerk or gate guard without identifying any transferable skills . . . ." Def.'s Resp. at 3. Thus, there is no dispute that of the three jobs identified by the VE, Plaintiff is only able to perform the job of surveillance system monitor.

### 3. As a Result of the Foregoing Errors, the ALJ's Determination That Plaintiff Can Perform a Significant Number of Jobs in the National Economy Was Also Erroneous

Because the ALJ's errors discussed above eliminated from consideration the jobs of information clerk and body guard or gate guard, the only remaining job identified by the VE that Plaintiff could perform was that of surveillance system monitor. The VE testified that there are only fifty-six sedentary positions and fifty-six light level positions for surveillance system monitor available in the regional economy. Tr. 64. Given these numbers, Plaintiff contends that the Commissioner failed to meet her burden of proving that there are jobs Plaintiff could perform that exist in significant numbers in the regional and national economies. According to Plaintiff, the case should therefore be remanded for an immediate award of benefits. Defendant responds that remand for an immediate award of benefits is premature because the evidence does not mandate a conclusion that Plaintiff is disabled. Defendant first contends that one hundred-twelve positions for surveillance system monitor constitutes a significant number of jobs existing in the regional economy. However, as Plaintiff points out in his reply, the fifty-six light level positions must be eliminated because the ALJ found that Plaintiff is limited to lifting ten pounds. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (light work

7

involves lifting up to twenty pounds). Thus, only fifty-six jobs for surveillance system monitor are available to Plaintiff in the region.

To the extent that Defendant may contend that fifty-six positions for surveillance system monitor constitutes a significant number of jobs existing in the regional economy, I disagree. Courts in the Tenth Circuit have "never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir. 1992). Rather, I should use common sense in applying the law to each individual claimant's situation. *Id.* In this case, I cannot say that it makes sense to find that fifty-six positions in the entire state of New Mexico constitutes a significant number of jobs. *See* Tr. 64 (VE testified that the "region" he was referring to is New Mexico). Instead, I agree with Judge Deaton's opinion in *Chavez v. Apfel,* No. CIV 94-0381 M/WWD. In that case, Judge Deaton found that 210 positions for receptionist or information clerk, 53 positions for counter rental clerk, and 150 positions for a cashier was not a significant number of jobs in the entire state of New Mexico. Likewise, particularly when considered in light of Plaintiff's testimony that his arm pain would make it difficult for him to drive very far to a job, *see* Tr. 40, I find that fifty-six positions in the entire state of New Mexico is not a significant number of jobs. Thus, the ALJ's conclusion that there are a significant number of jobs Plaintiff can perform is not supported by substantial evidence in the record.

### 4. Remand For an Immediate Award of Benefits is Not Appropriate at This Time, But The Commissioner May Not Reconsider Matters That Have Not Been Appealed

Although Defendant concedes that the ALJ committed errors at step five, the parties disagree as to whether this case should be remanded for an immediate award of benefits or for further proceedings. It is appropriate to remand for an immediate award of benefits where "additional fact-

finding would serve no useful purpose but would merely delay the receipt of benefits." *Harris v. Secretary of Health & Human Servs.,* 821 F.2d 541, 545 (10th Cir. 1987). Defendant requests remand for further administrative proceedings because the VE did not testify that the jobs of information clerk, body guard or gate guard, and surveillance system monitor were the *only* jobs a person with Plaintiff's limitations could perform. Thus, Defendant contends it would be premature at this time to find that Plaintiff is disabled. I agree, as I cannot say that additional fact-finding would serve no useful purpose. I find instead that remand for further proceedings is appropriate so that the Commissioner can ascertain whether there are any other jobs existing in significant numbers in the national and regional economies that a person with Plaintiff's limitations can perform.

In her request for remand, Defendant asserts that the Commissioner should be allowed to re-evaluate Plaintiff's RFC, and obtain new VE testimony that is based on a correct statement of the facts. According to Defendant, the Commissioner should be allowed to re-evaluate Plaintiff's medical source opinions, and "carefully evaluate whether Plaintiff had any transferable skills." Def.'s Resp. at 4. I disagree to the extent that the Commissioner may contend that she should be allowed to re-consider matters already decided that have not been appealed. For example, even though the ALJ determined that Dr. Belyn Schwartz's opinions are entitled to controlling weight, Tr. 20, Defendant argues that the case should be remanded so the Commissioner can "re-evaluate Plaintiff's medical source opinions." If the Court accepts this argument, the Commissioner could conceivably reverse her prior determination about the weight that should be accorded to Dr. Schwartz's opinions. However, if the Commissioner was dissatisfied with the ALJ's determination, the proper procedure would have been for the Appeals Council to initiate review of the ALJ's decision on its own motion. *See* 20 C.F.R. §§ 404.970, 416.1470. The Appeals Council has sixty days to initiate review of an

ALJ's decision, 20 C.F.R. §§ 404.969(a), 416.1469(a), and more than sixty days have elapsed since the ALJ issued his decision. Although the Appeals Council is thus foreclosed from initiating review of the ALJ's decision on its own motion, the Appeals Council may also reopen a case under certain conditions if it is unable to decide within sixty days whether to initiate review on its own motion. *See* 20 C.F.R. §§ 404.969(d), 416.1469(d). Nevertheless, since the Appeals Council has not reopened the ALJ's decision, I find that the ALJ's determination as to matters that have not been appealed in accordance with 42 U.S.C. §§ 405(g) and 1383(c)(3) stand as the final decision of the Commissioner.

In view of the foregoing discussion, I find that the case should be remanded so that the Commissioner may determine whether there are any jobs Plaintiff can perform that exist in significant numbers in the regional and national economies. The Commissioner may not, however, re-consider matters already decided that have not been appealed.

### B. Whether the ALJ Erred at Step Four of the Sequential Analysis

Assessment of a claimant's physical and mental residual functional capacity is undertaken at step four of the sequential analysis. *See Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). Plaintiff contends that, in the event that the Court does not order immediate payment of benefits based on the ALJ's step five errors, the ALJ should also be required to re-assess his mental residual functional capacity. Dr. Edward S. Naimark, who was Plaintiff's treating psychologist, diagnosed Plaintiff with "pain disorder," and the diagnosis included associated psychological factors and strong depressed features. Tr. 252. Dr. Naimark also completed a mental RFC assessment that indicated that Plaintiff has moderate or marked limitations in several areas. Tr. 258-60. Nevertheless, the ALJ gave little weight to Dr. Nairmark's opinion about Plaintiff's mental limitations because the ALJ concluded that Dr. Naimark's opinions were "disproved by the claimant's extensive activities, which

include attending college 5 days a week." Tr. 20-21. Plaintiff contends that the ALJ erred in discounting Dr. Naimark's opinions on this ground because he failed to consider Plaintiff's testimony that he has difficulty with school, needs school counseling, and also suffers side effects from medications he takes. Defendant's sole response to this contention consists of the statement that, on remand, the ALJ should be allowed to re-evaluate Plaintiff's RFC and "incorporate all of Plaintiff's exertional and non-exertional limitations in this assessment." Def.'s Resp. at 4.

Given the brevity of Defendant's response, I can only assume that Defendant concedes that the ALJ erred when he failed to consider Plaintiff's non-exertional limitations. I therefore find that on remand, the Commissioner shall re-assess Plaintiff's mental residual functional capacity, and discuss all pertinent evidence relating to Plaintiff's nonexertional limitations in her decision.

### C. Whether the Case Should be Assigned to a Different ALJ

In the event of a remand, Plaintiff also asks this Court to recommend that the case be assigned to a different ALJ. Although Defendant has not responded to this request, the Court is not prepared at this juncture to find that the present ALJ will be unable to follow the Court's directions on remand. Accordingly, the Court declines Plaintiff's request at this time.

### V. Conclusion and Summary

In sum, I find that the ALJ erred at step five of the sequential analysis when he failed to include all of the limitations expressed by Dr. Belyn Schwartz in his hypothetical to the Vocational Expert, when he failed to consider the Vocational Expert's testimony that Plaintiff did not have transferable job skills, and when he found that there are a significant number of jobs Plaintiff can perform that exist in the national economy. I further find that the ALJ erred when he assessed Plaintiff's mental residual functional capacity at step four of the sequential analysis in that he failed

11

to address Plaintiff's testimony that he has difficulty with school, needs school counseling, and also suffers side effects from medications he takes.

Accordingly, this matter shall be remanded to the Commissioner of Social Security to conduct further proceedings, which shall include:

1) At step four of the sequential analysis, the Commissioner should re-assess Plaintiff's mental residual functional capacity. In doing so, the Commissioner should consider and discuss Plaintiff's testimony that he has difficulty with school, needs school counseling, and suffers side effects from medications he takes.

2) At step five of the sequential analysis, the Commissioner should obtain additional testimony from a Vocational Expert to determine whether there are any jobs the Plaintiff can perform that exist in significant numbers in the regional and national economies. In doing so, the Commissioner's hypothetical to the VE should include all of the limitations noted by Dr. Belyn Schwartz in the Physical Capacities Evaluation she prepared on January 29, 2002. The Commissioner should also weigh in her step five determination prior testimony that Plaintiff has no transferable job skills. The Commissioner should not, however, re-consider matters that have not been appealed.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket # 15] is **GRANTED IN PART,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

 

**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**